## Case No. 4,101.

### The D. S. GREGORY.

[7 Ben. 499.] [1]

District Court, S. D. New York. Dec., 1874. [2]

COLLISION ON HUDSON RIVER — FERRY-BOATS—
CROSSING COURSES—FOG.

1. Two ferry-boats, the P. and the G., were bound from their respective slips on the New York side of the Hudson river to their slips on the New Jersey side. Their courses crossed each other, the P. having the G. on her starboard side. It was night. There was a dense fog, and the tide was ebb. Each vessel was blowing her steam whistle, and each pilot heard the whistle of the other boat, and understood from it that another steamboat was crossing his course. The pilot of the P., when he heard the whistle, stopped his boat and continued to blow his whistle, and, as the other whistle indicated the nearer approach of the other boat, he backed his boat before he saw the lights of the other boat, and the wheels of his boat were revolving backward when the collision occurred. The pilot of the G. did not slow or stop his boat when he heard the whistle of the P., but kept on at the same speed as before, the tide bearing his boat down on the P., and did not stop or back his engine till he saw the lights of the P. The G. struck the P. on the starboard side: Held, that the 19th (now 23d) rule has no application to a case of such a dense fog; and, though it would have been the duty of the G. to have kept on, without alteration of her course, if the P. could have seen and known her exact position, the pilot of the G. was, under these circumstances, in fault for not sooner stopping and backing his engine.

2. The P. could not be held in fault for not having avoided the G., when she, by stopping her headway, was obeying the 16th (now 21st) rule, which required her to go at a moderate speed in a fog.

3. The navigation of the P. was without fault, and the G. must be held responsible for the collision.

In admiralty.

William D. Shipman, for libellants.

Welcome R. Beebe, for claimants.

BLATCHFORD, District Judge. The Erie Railway Company, as owners of the steam ferry-boat Pavonia, bring this suit against the steam ferry-boat D. S. Gregory, to recover for the damages sustained by them in consequence of a collision which took place between those two ferry-boats, in the Hudson river, on the morning of January 3d, 1873, at about 7 o'clock. The Pavonia was on a trip from the foot of Chambers street, New York, to her slip at Pavonia, on the New Jersey side. The D. S. Gregory was on a trip from the foot of Desbrosses street, New York, to her slip at Jersey City,

---

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 4,103.]

on the New Jersey side. Desbrosses street being higher up the river than Chambers street, and the Pavonia slip being higher up the river than the Jersey City slip, the courses of the two boats crossed each other. The tide was ebb, and there was a dense fog at the time. Both vessels were side-wheel boats. The Pavonia was struck on her starboard side a little forward of her starboard wheel, the D. S. Gregory going in under her guard, and knocking a large hole in her.

The libel avers, that, immediately before the collision, the pilot of the Pavonia heard a steam whistle, which proved to be the steam whistle of the D. S. Gregory, and which, from the sound, indicated that the D. S. Gregory was proceeding directly across the track of the Pavonia; that thereupon the pilot of the Pavonia immediately caused her engine to be stopped, and she had come to a stop before the collision, and was backing at the time of the collision; that, in the mean time, her fog-whistle was continually sounded, and as rapidly as possible; that the persons navigating the D. S. Gregory, disregarding the signal of the Pavonia, bore rapidly and directly down upon the Pavonia, apparently at full speed, immediately on observing which the pilot of the Pavonia reversed his engine, but, owing to the density of the fog, and the speed of the D. S. Gregory, and her near proximity before she was discovered, he was unable to get out of the way of the D. S. Gregory; that the collision was occasioned by negligence, inattention and want of care and skill on the part of the D. S. Gregory; that she was running at a dangerous and improper rate of speed, under the circumstances, rendering it impossible for her to avoid the collision when the position of the Pavonia was discovered; that the persons navigating the D. S. Gregory were negligently inattentive to the fog signals of the Pavonia, by due attention to which the position of the Pavonia might have been known to the D. S. Gregory, and the collision avoided; and that the collision was not occasioned by any fault on the part of the Pavonia.

The answer avers, that the D. S. Gregory, as she proceeded, heard, from time to time, off her port hand, a whistle, which was believed to be from a ferry-boat crossing from New York to New Jersey; that the D. S. Gregory kept steadily on her course, slowly feeling her way along, and blowing her whistle at short intervals, until she made a green light ahead and very close; that the bell of the D. S. Gregory was then rung to stop and back, and about four revolutions were made before the vessels came together; that, if the Pavonia had been on her usual and proper course to her slip on the New Jersey side, on an ebb tide, or had she kept steadily on the course she was on, or had she stopped in time, or backed when her green light was first seen, no collision could have taken place; that she did not back until the collision had taken place or the vessels were in the act of striking; that, as the courses of the two vessels were crossing, and the Pavonia had the D. S. Gregory on her starboard side, it was her duty to avoid the D. S. Gregory; that the collision was occasioned by carelessness and want of skill on the part of those navigating the Pavonia, she having at the time no lookout, or from inevitable accident; and that the navigation of the D. S. Gregory was without fault, she having a careful lookout and a competent pilot, and running at a slow rate of speed, and constantly blowing her whistle, and stopping and backing immediately upon making the green light of the Pavonia.

The evidence in the case is clear and abundant to establish that the D. S. Gregory was solely in fault for the collision. The case was not, as is suggested in the answer, one of inevitable accident. There was, it is true, a very thick fog, and its existence required, on the part of both boats, the exercise of great care and caution in navigation; but all the circumstances indicate that the collision would have been avoided, or would have produced no injury, if the D. S. Gregory had been as cautious and prudent as the Pavonia. Each boat knew that the other was running on a regular ferry. The Pavonia knew that if, as she proceeded on her way, she heard a whistle off her starboard hand, such whistle was quite likely to be from a boat proceeding from Desbrosses street to Jersey City, on a course crossing the course of the Pavonia. The Pavonia heard such whistle on her starboard hand, she having been before that time running slowly and blowing her own whistle. When she heard the whistle from the other boat, she stopped her engine, and continued to blow her own whistle. As the sound of the whistle from the other boat indicated the nearer approach of the other boat, the Pavonia's engine was backed. This was done before the Pavonia discovered the light of the D. S. Gregory, and the wheels of the Pavonia were revolving backward when the vessels struck. In like manner, the D. S. Gregory knew, that if, as she proceeded on her way, she heard a whistle off her port hand, such whistle was quite likely to be from a boat proceeding from Chambers street to Pavonia, on a course crossing the course of the D. S. Gregory. The D. S. Gregory heard such whistle on her port hand, yet she kept on, at the same speed as before, the tide aiding to carry her down upon the Pavonia, and did not stop or back until she discovered the light of the Pavonia. The character of the wound inflicted on the Pavonia indicates what the force of the headway of the D. S. Gregory must have been, the Pavonia, because of her having been previously stopped, in the ebb tide, and then having backed before she saw the light of the D. S. Gregory, not having any forward motion. It was reckless in the D. S. Gregory to-

so navigate. It was her duty to have stopped sooner, as the Pavonia did, and the more because she was moving with the tide. If she had sooner stopped, so that her motion towards the Pavonia would have been only that of the tide, no material damage could have ensued from the collision.

There is no evidence to show that the Pavonia was not in the place and on the course where she might properly have been looked for if there had been no fog. It is sought to be imputed to her, as a fault, that she did stop, and that she did not proceed with unabated speed; and it is claimed, that, if she had not stopped, she would, at the time of the collision, have been beyond the reach of the D. S. Gregory, and that it was the duty of the D. S. Gregory to proceed on her course, because it was her duty to keep her course, and not embarrass the Pavonia in discharging her duty of keeping out of the way of the D. S. Gregory, because she had the D. S. Gregory on her starboard side, and the courses of the two vessels were crossing. The rule thus invoked has no application to a case of such a fog. If the Pavonia could have seen and known the exact position of the D. S. Gregory, then the rule would have been applicable. But, having stopped, on hearing the approach of the D. S. Gregory, and then having backed, the D. S. Gregory being all the time invisible because of the fog, the Pavonia cannot be held responsible at all events for not having avoided the D. S. Gregory, when she was obeying the other rule, of going at a moderate speed in a fog, by stopping her headway entirely, while the D. S. Gregory was not going at a moderate speed in the fog, and was maintaining, of herself and with the tide, such a speed as made it impossible for the Pavonia to discover her in season to avoid her. If the Pavonia had kept on, instead of stopping and then backing, it would have been impossible not to have held her to have been in fault. There must be a decree for the libellants, with a reference to a commissioner, to ascertain the damages sustained by them by the collision.

[NOTE. On appeal by the claimants, the decree was affirmed by the circuit court. See Case No. 4,103.]